IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Julian Harman, | ) | |
| | ) | Civil Action No. 6:13-1728-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Julian Harman ("Harman"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 33).[1] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Harman filed objections to the Report (ECF No. 38), and the Commissioner has responded to those objections (ECF No. 40). Accordingly, this matter is now ripe for review.

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

**BACKGROUND**

Harman applied for DIB and SSI in July 2008, alleging disability beginning on October 1, 2004. Harman's application was denied initially and on reconsideration. On February 15, 2012, an Administrative Law Judge ("ALJ") heard testimony from Harman and a vocational expert. Subsequently, the ALJ issued a decision denying Harman's claim.

In her decision, the ALJ found that Harman suffered from the following severe impairments: major depressive disorder, posttraumatic stress disorder, panic disorder without agoraphobia, social phobia, substance abuse disorder, status post fusion C3-C5, status post decompressive lumbar laminectomy L3-S1, neck pain, low back pain, and a history of seizures and right ulnar neuropathy. (ECF No. 33, p. 2). As a result, the ALJ limited Harman to light work and found that, despite his limitations, jobs existed in significant numbers in the national economy that Harman could perform. (ECF No. 33, p. 2-3). The Appeals Council denied Harman's request for review, making the ALJ's decision the final decision of the Commissioner. This action followed.

**STANDARD OF REVIEW**

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations,

or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

Harman asserts two main objections[2]: (1) the ALJ failed to properly evaluate his manipulative restrictions in the RCF finding; and (2) the ALJ erred in failing to adequately define "assistive use."

### A. Substantial Evidence Existed for the ALJ's Finding of Manipulative Restrictions

Harman contends that the ALJ failed to properly evaluate his manipulative restrictions in the residual functional capacity ("RCF") finding. In this regard, he makes two broad claims as to why the ALJ's opinion is not supported by substantial evidence. First, Harman argued in his initial brief (ECF No. 29) and in his objections (ECF No. 38) that the ALJ improperly gave "very substantial weight" to one state agency physician, while giving only "substantial weight" to a different state agency physician who examined Harman approximately a year and a half after the first state physician.

---

[2] In his objections to the Report, Harman mentions that his claim for DIB should be considered "very carefully" because at the time of the ALJ hearing, Harman was about six months from his 55th birthday. (ECF No. 38, pp. 1-2). He argues that Grid Rule 202.06 was almost applicable given his age and is thus a relevant, but not dispositive, factor for the court's consideration. (ECF No. 38, p. 1). The court's duty is to determine whether substantial evidence existed for the ALJ's determination, not to consider whether the decision of the ALJ would have been different had Harman waited additional time before filing his claim. *See* 42 U.S.C. § 405(g) (defining the standard of review).

"Courts evaluate and weight medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005)). Moreover, although ALJ's are not bound by findings made by a state agency medical physician, a state agency physician's opinion must be considered as an opinion of a highly qualified physician who is an expert in disability claims under the SSA. 20 C.F.R. § 404.1527(e)(2)(i); *see also* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

The ALJ stated that it gave greater weight to Dr. Seham El-Ibiary's opinion than to Dr. Darla Mullaney's opinion because it was consistent with the medical evidence of the record, while Dr. Mullaney's opinion was inconsistent with the medical evidence of the record. (ECF No. 10-2, p. 31). The disagreement between the two opinions involved the ability of Harman to use his nondominant upper extremity (right arm). (ECF No. 33, p. 24). Dr. El-Ibiary opined that Harman had "frequent handling and fingering with the right hand," while Dr. Mullaney stated that Harman was limited to "occasional reaching, handing, and fingering with the right upper extremity." (ECF No. 10-2, p. 31).

Harman bases his argument on the belief that Dr. El-Ibiary's opinion was provided before the medical treatment records referred to Harman having a clawing deformity. (ECF No. 38, p. 8). As the magistrate judge properly found, this belief is unfounded. (ECF No. 33, p. 25-26). The magistrate judge determined that Dr. El-Ibiary's opinion was provided three months after

4

Dr. William Warmath reported that Harman had a "claw hand deformity." (ECF No. 33, p. 25). Furthermore, Dr. Mitchell Hegquist had acknowledged that Harman had a 30 degree flexion contracture in his right hand prior to Dr. El-Ibiary giving her opinion. (ECF No. 33, pp. 25-26). Finally, Dr. El-Ibiary stated that Harman had changes to his fingers. (ECF No. 33, p. 26). As explained thoroughly by the magistrate judge (ECF No. 33, p. 21-22), Dr. El-Ibiary's opinion is indeed consistent with the medical evidence of the record. *See Smith v. Schwiker*, 795 F.2d 343, 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record." (citation omitted)). Therefore, Harman's objection is without merit.

Second, Harman argues that the medical evidence does not support a finding that Harman had no manipulative restrictions. Harman argues that the ALJ should have analyzed or explained how evidence documenting Harmon's significant manipulative restrictions supported the finding that he had normal manipulative functioning. (ECF No. 38, p. 8). He relies on *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984) to support his argument.

In *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), the Fourth Circuit stated that "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." The court remanded the case because "[n]either the ALJ nor the Appeals Council indicated the weight given to the various medical reports submitted." *Id.* at 236. Although an ALJ needs to indicate the weight given to evidence so that a reviewing court can determine if the findings are supported by substantial evidence, *id.*, an ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion "what the ALJ did and why he did it." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)) (holding that an

ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998))).  The function of this court is not to reweigh the evidence in the record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.1986).  Rather, the court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Harman does not provide the court with a specific medical opinion that the ALJ did not consider. *See* (ECF No. 38).  Instead, Harman broadly states that the ALJ "cherry-picked" the administrative record.  (ECF No. 38, p. 7).  However, as the magistrate judge noted, the ALJ repeatedly addressed the evidence concerning the plaintiff's pain, numbness, and weakness. *See* (ECF No. 33, p. 22 (citing ECF No. 10-2, pp. 17, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 32)).  Moreover, the ALJ stated the weight given to each of the physician's opinions, as the Report acknowledged. *See* (ECF No. 33); *see also* (Ex. No. 10-2, pp. 30-32) (stating the weight given to the opinions of Dr. Rhine, Dr. El-Ibiary, Dr. Mullaney, Dr. Weymouth, Dr. Del Rio, Dr. Wieland, Dr. Clanton, Dr. Waller, and Dr. Fogle).  In addition, Harman has failed to argue how a more thorough consideration of that evidence would have affected the ALJ's findings other than to state, generally, that this was an error. *See Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001) (unpublished) (Claimant "made no showing of prejudice.  Thus, any error on the part of the ALJ was harmless.").  Accordingly, the court is not persuaded by this objection, and finds that the ALJ's decision in this regard is supported by substantial evidence.

**B.  The ALJ Did Not Err Defining "Assistive Use."**

6

Harman argues that the vocational expert and the ALJ improperly used the word "assistive use." (ECF No. 38, p. 9). In support of his argument, he states—without any citations—that the term was not used as it is generally regarded in disability cases. (ECF No. 38, p. 9). In his initial brief, Harman also cites no authority but instead states: "As the Court may be familiar from any number of cases where this term has come up in the past, ALJ's describe someone as having 'assistive use' of an upper extremity or refer to an upper extremity as being used as 'as assist' when the individual can basically use their upper extremity as a prop, or assist for their other hand." (ECF No. 25, p. 25). The court is unfamiliar with such cases, and Harman has failed to cite to any authority to support this argument.

Nonetheless, the Commissioner in her initial brief (ECF No. 29, p. 16) cites to what she considers the only case in the Fourth Circuit that has examined the term "assistive use," which is *McFarlin v. Colvin*, No. 4:12-cv-01233-DCN, 2013 WL 4505420 (D.S.C. Aug. 22, 2013). In *McFarlin*, the ALJ had limited the claimant to "no use whatsoever even no assistive use of the non-dominant left upper extremity." *Id.* at *6. The court does not take from this case what Harman argues. Moreover, the ALJ's decision here is clear that the ALJ limited Harman to frequent reaching, fingering, and handling with his nondominant hand and that he had an unlimited ability to use his dominant hand to assist with those manipulative activities. *See* (ECF No. 10-2, p. 31) (giving very significant weight to Dr. El-Ibiary's opinion).

Furthermore, even if Harman could show error, he could not show prejudice. The interrogatory clearly describes Harman as someone with "[f]requent reaching, fingering and handling with the non-dominant hand, with unlimited assistive use of the dominant hand." (ECF No. 10-2, pp. 48-51). The evidence of Harman's unlimited ability to use his dominant hand is supported by the medical testimony, including Dr. Mullaney. (ECF No. 10-2, pp. 21-25,

7

1325).  What Harman appears to be arguing is that the interrogatory would have been different with the word "occasional" instead of "frequent."  (ECF No. 38, pp. 9-10).  As stated above, substantial evidence existed for the ALJ's reliance on Dr. El-Ibiary's opinion that Harman had "frequent" ability with his non-dominant hand.  Harman does not present any evidence that would indicate that the ALJ's opinion about Harman's unlimited ability to use his dominant hand is not supported by substantial evidence.  *See* (ECF No. 38).  Accordingly, the court finds Harman's objection unpersuasive.

## CONCLUSION

After carefully reviewing the record, the court finds that the ALJ, in reviewing the medical history and subjective testimony, conducted a thorough and detailed review of Harman's impairments, arguments, and functional capacity.  Likewise, the magistrate judge considered each of Harman's arguments and properly addressed each in turn, finding them without merit.  Having conducted the required de novo review of the issues to which Harman has objected, the court finds no basis for disturbing the Report.  Accordingly, the court adopts the Report and its recommended disposition.  Therefore, for the reasons set out above and in the Report, the Commissioner's final decision is **AFFIRMED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 22, 2014

8